EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.*
TULIO BERMÚDEZ, acusado y apelante.

No. 3335.—*Visto:* Diciembre 15, 1927. *Resuelto:* Enero 31, 1928.

DERECHO PENAL—EVIDENCIA—CONOCIMIENTO JUDICIAL, PRESUNCIONES Y PESO DE
LA PRUEBA—MATERIAS OBJETO DE CONOCIMIENTO JUDICIAL—REGLAMENTOS
ADMINISTRATIVOS.—La sección 15 de la Ley No. 81 de 1912, al exigir que
se tome conocimiento judicial de la adopción y publicación de los Reglamen-
tos de Sanidad no puede interpretarse en el sentido de prohibir que se tome
conocimiento judicial del asunto de tales reglamentos.

SENTENCIA de *Angel Acosta Quintero,* J. (Ponce), condenando al
acusado por delito de adulteración de leche. *Confirmada.*

*E. Arjona Siaca,* abogado del apelante; *José E. Figueras,* abogado
de *El Pueblo,* apelado.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del
tribunal.

Tulio Bermúdez fué convicto del delito de transportar
leche adulterada y alega que la corte inferior erró al decla-
rar sin lugar una excepción perentoria a la acusación. La
teoría de la excepción fué que la corte inferior carecía de
jurisdicción para conocer de un caso en el cual se había
enmendado la acusación sin obtenerse primeramente per-
miso para ello. Esta proposición, según se desarrolla en el
alegato, gira sobre una cuestión de hechos que está envuelta
en el tercer señalamiento, al efecto de que la corte de dis-
trito erró al resolver que se había concedido permiso para
enmendar la acusación, según lo demostraba la transcrip-
ción taquigráfica, pues la concesión de tal permiso no apa-
rece en la transcripción taquigráfica.

Si bien es cierto que dichos autos no dicen expresamente
que se concedió permiso para enmendar la acusación, el he-
cho de que no sólo se solicitara tal permiso oportunamente
sino de que el fiscal lo obtuviera, creemos que aparece ra-
zonablemente de la faz de los autos tomados en conjunto,
incluyendo la transcripción taquigráfica.

El segundo señalamiento, en substancia, es que la corte
inferior cometió error al declarar sin lugar una moción de
*nonsuit* y al resolver como base para tal actuación que los

inspectores del gobierno pueden determinar la cuestión de
si la leche está adulterada, fundándose en su experiencia
personal y no de conformidad con el grado legal (*standard*)
fijado por la ley.   El quinto señalamiento envuelve la misma
cuestión, al efecto de que la sentencia no está sostenida de-
bidamente ni por la ley ni por la prueba aducida durante
el juicio.

La declaración de un químico que había analizado una
muestra de la leche en cuestión, tendió a demostrar que él
basaba su conclusión respecto a que la leche estaba adulte-
rada en el resultado de tal análisis, independientemente del
grado legal.   Sin embargo, dicha declaración demuestra ade-
más concluyentemente que la leche era inferior al grado
legal.

El cuarto señalamiento es que la corte inferior erró al
tomar conocimiento judicial de los Reglamentos de Sanidad.

En el caso de *El Pueblo* v. *Rivera,* 31 D.P.R. 646, esta
corte resolvió, según se dice en el sumario, que:

"Aunque generalmente las cortes no pueden tomar conocimiento
judicial de los reglamentos promulgados por las distintas oficinas
del gobierno, las cortes están obligadas a tomar conocimiento judi
cial de los reglamentos del Departamento de Sanidad que prescri-
ben la norma para determinar lo que es leche adulterada a los fines
de la ley castigando su adulteración y venta, por mandato expreso
de la sección 15 de la Ley núm. 81 de 1912 para reorganizar el ser-
vicio de sanidad."

El artículo arriba citado dice así:

"Se requiere de las cortes de justicia el tomar conocimiento ju-
dicial de la adopción de dichas reglas y reglamentos y de la publi-
cación de los mismos que se requiere por esta Ley."

La contención del apelante es que la disposición estatu-
toria que acabamos de transcribir exige que las cortes to-
men conocimiento judicial de la "adopción" y "publica-
ción" pero no del contenido de las reglas y reglamentos de
sanidad.   La interpretación sugerida, sin embargo, estaría
más de acuerdo con la letra que con el espíritu y propósito

de la ley.   El apelante no ofrece siquiera una teoría alter-
nativa respecto a lo que la Legislatura pudo tener en mente
en ausencia hipotética de la intención de que se tomara co-
nocimiento judicial de las reglas y reglamentos de sanidad
al ser adoptados y publicados, según lo exige la ley.

Aquí la Legislatura está tratando de la cuestión de co-
nocimiento judicial y no con el problema de identificación o
autenticación con el fin de ofrecer y presentar prueba en un
juicio.

"Conocimiento judicial puede ser definido como el conocimiento
de ciertos hechos que jueces y jurados pueden tomar propiamente
y actuar sobre los mismos sin necesidad de prueba, en vista de que
ya los conocen.   Se dice que la frase 'conocimiento judicial' no
quiere decir otra cosa que la corte traerá ante sí y considerará, sin
necesidad de prueba sobre tales hechos, su conocimiento de aquellas
materias de interés público que son conocidas por todas las perso-
nas bien informadas."   23 C. J. pág. 58, párrafo 1807.

La Ley de Evidencia, según se define en el artículo 3 de
la ley aprobada el 9 de marzo de 1905, en lo pertinente a la
cuestión que tenemos bajo nuestra consideración "es una
colección general de reglas: 1, Para declarar lo que ha de
admitirse como cierto, sin prueba; 2, Para determinar las
presunciones legales, así las controvertibles como las conclu-
yentes; 3, Para la proposición y admisión de pruebas . . ."

Entre las presunciones controvertibles enumeradas en el
artículo 102 de dicha Ley de Evidencia hallamos las si-
guientes:

"34. Que un libro impreso y publicado, que se dice haberlo sido
por autoridad pública, fué impreso o publicado por tal autoridad."

El artículo 69 de la citada Ley prescribe en detalle la
forma en que ciertos documentos oficiales pueden ser pro-
bados, y el inciso 5 de dicho artículo dice así:

"5. Los actos de una corporación municipal de Puerto Rico, o
de una junta o departamento de la misma, mediante copia, certifi-
cada por el correspondiente archivero, o mediante un libro impreso,
publicado por autoridad de dicha corporación."

Las derogaciones implícitas no son favorecidas y no tenemos razón para creer que la Legislatura trató en 1912 de suprimir la formalidad de exigir un certificado o una edición impresa por vía de autenticación de las reglas y reglamentos de Sanidad al ser ofrecidos como prueba en un caso criminal, y al mismo tiempo, exigiendo que se tomara conocimiento judicial de la adopción y publicación de los mismos, prohibir que se tomara conocimiento judicial del asunto de tales reglas y reglamentos. Y en ausencia de una razón satisfactoria para interpretar la disposición en cuestión, según lo sugiere el apelante, la única alternativa lógica es ceñirse a la conclusión a que ya se ha llegado en el caso de *El Pueblo* v. *Rivera, supra.*

*La sentencia apelada debe ser confirmada.*

El Juez Asociado Señor Texidor no intervino.